WALTER E. ALAIR vs. NORTHERN PACIFIC RAILROAD CO.

Argued April 12, 1893. Decided April 27, 1893.

### Carrier's Liability Limited by Contract.

The owner of some horses delivered them to a common carrier for transportation under a contract, signed by him, stating the terms and conditions upon which the property was to be transported, by which it was agreed "that the value of the live stock to be transported under this contract does not exceed the following mentioned sums, to wit: Each horse, $100; each ox, $50; each bull, $50; each cow, $30; * * * such valuation being that whereon the rate of compensation to the company for its services and risk connected with said property is based." *Held*

that, assuming that the contract was fairly made for the purposes therein expressed, (the sums named being approximately the average values of ordinary domestic animals,) this was a just and reasonable mode of securing a due proportion between the amount for which the carrier becomes responsible and the freight which he receives, and of protecting himself against extravagant valuations in case of loss, and that the recovery of the owner will be limited to the sums named, even although the loss occurred through the negligence of the carrier or his servants.

Appeal by defendant, Northern Pacific Railroad Company, from an order of the District Court of Ramsey County, *J. J. Egan, J.,* made November 7, 1892, sustaining a demurrer to its answer.

The plaintiff, Walter E. Alair, on April 4, 1891, delivered to defendant at Minnesota Transfer in St. Paul, eighteen horses to be transported to Seattle, Washington. The plaintiff at the same time entered into a contract with the company in which it was agreed that the value of each horse did not exceed $100; such valuation being that whereon the rate of compensation to the company for its services and risk connected with the property was based. Seven of the horses, worth $2,100, were killed on the route, by the negligence of the defendant in operating its railway. Prior to the commencement of this action, the company tendered to the plaintiff $700 and afterwards brought it into court and deposited it for the plaintiff. These facts were set forth in the answer, and plaintiff demurred thereto, and the trial court sustained the demurrer. Defendant appeals.

*John H. Mitchell, Tilden R. Selmes,* and *Wm. Allen Butler,* for appellant.

Plaintiff's contention is, that the contract on which he sues is valid against the company as to the rate of freight, but void as to the agreed value of his property.

It was lawful for the defendant to make the contract with the plaintiff for the transportation of his property, agreeing as to the value of the property, and fixing the rate of freight accordingly. The terms and conditions of the contract as to such value, and the rate of freight based thereon, were just and reasonable, and should be upheld. *Hart* v. *Pennsylvania Railroad Co.,* 112 U. S. 331.

The plaintiff in this action must concede that the law in England and in most of the States of the United States accords with the above cited decision, but he claims that this court will apply a contrary rule, following *Moulton* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 85; *Boehl* v. *Chicago, M. & St. P. Ry. Co.*, 44 Minn. 191.

The *Moulton* case is really an authority for the defendant, and the case of *Boehl* does not touch the point raised on this appeal.

The *Moulton* case was classed in the opinion in *Hart* v. *Pennsylvania R. Co.*, among the authorities condemning without qualification, any limitation by a carrier of its common law liability for its negligence; but the text of the opinion of this court, does not warrant such a classification. The inadvertence has been followed in text books of later date. *Liverpool Steam Co.* v. *Phenix Ins. Co.*, 129 U. S. 397.

*Lawler, Durment & Bigelow,* for respondent.

A contract made by a common carrier with a shipper is void as against public policy when it seeks to limit the amount to be recovered for loss or damage arising from the negligence of the common carrier, in the absence of any fraud upon the part of the shipper in concealing or misrepresenting the value of the freight shipped. *Moulton* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 85; *Railroad Co.* v. *Lockwood*, 17 Wall. 357; *Railway Co.* v. *Stevens*, 95 U. S. 655; *Southern Express Co.* v. *Moon*, 39 Miss. 822; *United States Express Co.* v. *Blackman*, 28 Ohio St. 144; *Black* v. *Goodrich Transp. Co.*, 55 Wis. 319.

If it is competent to make a contract limiting the recovery, in case of loss, to an agreed value, there is no agreed value in the case at bar. There is no certain value agreed on in the contract.

This court has decided that a common carrier cannot limit his liability for his own negligence, either as to the right, or the amount of the recovery. *Boehl* v. *Chicago, M. & St. P. Ry. Co.*, 44 Minn. 191.

MITCHELL, J. The complaint alleges the delivery by plaintiff to defendant, a common carrier, of eighteen horses for transportation;

that seven of the horses, of the value of $2,100, were, while in transit, killed through the negligence of the defendant.    Judgment is asked for $2,100.

The answer admits the delivery and receipt of the horses for transportation, their value, and their loss through its negligence, as stated in the complaint, but alleges that the property was delivered and received upon a special written contract, executed by both parties, containing the terms and conditions on which the defendant undertook to transport it, one of which was that "it is hereby further agreed that the value of the live stock to be transported does not exceed the following mentioned sums, to wit:  Each horse, $100; each ox, $50; each bull, $50; each cow, $30;  *  *  *  such valuation being that whereon the rate of compensation to this company for its services and risks connected with said property is based."    The answer further alleges a tender of $700, which is kept good by bringing the money into court.    This appeal is from an order sustaining a demurrer to the answer on the ground that the facts stated do not constitute either a defense or counterclaim.

The sole question is whether this stipulation as to the value of the property is valid and binding, so as to limit the amount of plaintiff's recovery when the loss occurred through defendant's negligence.    As against plaintiff's demurrer it must be assumed that this stipulation was fairly made, and for the purposes therein expressed.

How far, or in what respects, a public carrier of goods may limit his common-law liability is by no means a new question in the courts.    At common law he was practically an insurer of the property.    The rule imposing this extraordinary liability had its origin in considerations of public policy; and, as the duties of a common carrier are public in their nature, in the due performance of which the public at large, as well as the particular shipper, have an interest, and as the carrier and the shipper do not stand on a footing of equality, the latter often having no choice but to accept such conditions as the former might impose, the tendency of the courts formerly was to hold that it was against public policy, or, as otherwise expressed, not just and reasonable, to permit a common carrier to stipulate for any modification of his common-law liability, even by special contract with his customer.

But in course of time, the improved state of society, the introduction of better and safer modes of transportation, the diminished opportunities of collusion and bad faith on part of the carrier, and other considerations, rendered less imperative the rigorous application of the iron rule of the common law. The result has been that the courts now uphold as just and reasonable numerous limitations to, or exemptions from, the common-law liability of carriers, which would formerly have been held against public policy and void.

In fact, it has now become the accepted general business usage (which is itself strong evidence as to what is in accord with public policy) for carriers and shippers to contract for some exemptions from the strict liability imposed by common law. At one time the courts in England had gone so far as to hold that public carriers might by special contract, and even by public notice, relieve themselves from liability for the consequences of the gross negligence, or even felony, of their servants.

This led, in 1854, to the passage of the act commonly called the "Railway and Canal Traffic Act," declaring that such carriers should be liable for loss occasioned by their own neglect or default, or that of their servants, notwithstanding any notice, condition, or declaration to the contrary, but providing that they might make such conditions with respect to the carriage of goods as should be adjudged "just and reasonable" by the court or judge before whom the case should be tried. It is significant of the views of parliament as to what conditions would be just and reasonable, and hence in accordance with public policy, in case of the transportation of live stock, that this same statute provides that no greater damages shall be received for any animal than certain specified sums, (presumably fixed with reference to the average value of ordinary animals,) unless a higher value is declared by the shipper at the time of delivery. This is perhaps not without some weight in considering the justness and reasonableness of the conditions or stipulations of the contract now before us.

It would hardly be in point to consider the English decisions under this statute as to what conditions are or are not "just and reasonable," further than to say that beyond a doubt they would uphold the validity of the one now under consideration.

In the United States, at least since the case of *New Jersey Steam Nav. Co.* v. *Merchants' Bank*, 6 How. 344, it has been the universal law of this country that, in the absence of a statute prohibiting it, any common carrier may by special contract limit his common-law liability, provided the contract is "just and reasonable in the eye of the law." We adopt this form of statement advisedly, for in all the cases the ultimate test applied by the courts in determining whether a condition limiting the common-law liability was or was not against public policy has been whether, under all the circumstances, it was or was not just and reasonable in the eye of the law. In the leading case of *Railroad Co.* v. *Lockwood*, 17 Wall. 357, the court placed its decision that a carrier could not stipulate for exemption from responsibility for the negligence of himself or his servants upon that express ground. The English statute, already referred to, in using the expression "just and reasonable," but adopted the existing rule of law. The right of the common carrier to limit his common-law liability by special contract was fully recognized by this court as long ago as *Christenson* v. *American Express Co.*, 15 Minn. 270, (Gil. 208;) but, in accord with the great weight of authority in this country, we have held that he cannot contract for exemption, either in whole or in part, from liability for the negligence of himself or his servants; that such an exemption is against public policy, because it would enable him to put off the essential duties of his public employment. *Christenson* v. *American Express Co., supra; Shriver* v. *Sioux City & St. P. R. Co.*, 24 Minn. 506; *Ortt* v. *Minneapolis & St. L. Ry. Co.*, 36 Minn. 396, (31 N. W. Rep. 519;) *Moulton* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 85, (16 N. W. Rep. 497;) *Boehl* v. *Chicago, M. & St. P. Ry. Co.*, 44 Minn. 191, (46 N. W. Rep. 333.)

The case, therefore, comes down to a question of the construction to be placed on this stipulation. If the purpose of it was *merely* to place a limit on the amount for which the defendant should be liable, then clearly, as to losses resulting from negligence, it is not just or reasonable, and is not binding on the plaintiff. On the other hand, if it was a stipulation as to the value of the property, fairly and honestly made as the basis of the carrier's charges and responsibility, then we think it ought to be upheld

as a just and reasonable mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations.

At this point we may suggest that, so far as the question now under consideration is concerned, we see no difference between a case like the present, where the stipulation is that the value of the property does not *exceed* a specified sum, and one where the value is stipulated *to be* a specified sum; also that it makes no difference whether the valuation expressed in the contract is one previously named by the shipper on requirement of the carrier, or one inserted in the contract by the carrier without being named by the shipper, but acquiesced in by him. In either case it becomes a part of the contract on which the minds of the parties meet, and on which they act. Also, if the purpose of the stipulation is a lawful and proper one, the mere fact that it may incidentally have the effect of limiting the amount of the carrier's liability in case of loss caused by negligence will not render it invalid.

Contracts of this kind relating to the transportation of live stock are very common, and their reasonableness, at least as applied to that class of property, seems to us quite apparent. Every one may be presumed to know approximately the average value of ordinary domestic animals, but it is well known that many animals have a special value because of some peculiar qualities—such as speed or pedigree—which are not apparent from mere inspection. For example, a horse which, to one not acquainted with it, might not appear to be worth more than any ordinary horse, might, because of speed, be worth $10,000. The agents of common carriers are not expected to be, and usually are not, experts as to the special or peculiar value of particular animals. Ordinarily they would know nothing about the matter except what they learned from the shipper's statement. Presumably, the charges for transportation are to a considerable extent based on the value of the property. Moreover, the measure of care on part of the carrier will naturally be commensurate with the value of the property intrusted to him. Consequently the law always required entire good faith on part of the shipper in stating the nature and value of property delivered to a carrier for transportation. Even when the common-law liability of

carriers was enforced most rigorously, the courts always upheld limitations of it imposed for the purpose of procuring a full disclosure of the value of the property, especially of articles of unusual value, or subject to extra hazard. This is illustrated in that numerous class of cases where packages whose contents were not open to inspection were delivered to an express company or other carrier by the owner, who accepted a receipt therefor containing a condition that in case of loss the holder should not demand beyond a specified sum, at which the article was thereby valued, unless a greater value was expressed or declared. But we see no difference in principle between a case where the value of the property is unknown to the carrier because inclosed in a box, and one where it is unknown because dependent on latent qualities not ordinarily ascertainable by inspection. We think we are justified in taking judicial notice of the fact that the maximum values placed by this contract on different kinds of domestic animals are approximately those of average ordinary animals in the country through which defendant does business. By executing this contract the plaintiff stipulated, and in effect represented to defendant, that his horses were not worth to exceed $100 each, and that the charges for transportation should be based on that valuation. Assuming, as we must, that the contract was fairly made for the purposes expressed in it, we think it ought to be upheld as just and reasonable. It is not in any proper sense a contract for exemption from the consequences of negligence. In this view we are sustained by the great weight of authority. *Hart* v. *Pennsylvania R. Co.*, 112 U. S. 331, (5 Sup. Ct. Rep. 151;) *Squire* v. *New York Cent. R. Co.*, 98 Mass. 239; *Graves* v. *Lake Shore & M. S. R. Co.*, 137 Mass. 33; *Hill* v. *Boston, H. T. & W. R. Co.*, 144 Mass. 284, (10 N. E. Rep. 836;) *South & North Ala. R. Co.* v. *Henlein*, 52 Ala. 606; *Louisville & N. R. Co.* v. *Sherrod*, 84 Ala. 178, (4 South. Rep. 29;) *Harvey* v. *Terre Haute & I. R. Co.*, 74 Mo. 538; *Louisville & N. R. Co.* v. *Sowell*, 90 Tenn. 17, (15 S. W. Rep. 837;) *Duntley* v. *Boston & M. R. Co.*, 66 N. H. ——, (20 Atl. Rep. 327.)

We cite no cases from jurisdictions where contracts for exemption from liability for negligence are upheld, as they would not be in point in this state.

In fact, it will be found that there are very few authorities against our views. Most of the cases, usually carelessly cited as authority on the other side of this question, will be found, on careful examination, to be clearly distinguishable and not in point. In some of them the stipulation was purely and solely one arbitrarily limiting the amount of recovery, without regard to the value of the property, as in *Moulton* v. *St. Paul, M. & M. Ry. Co.*, *supra*. In others it was held that the shipper never agreed to the limitation, and for that reason was not bound by it. In others the decision was expressly placed on the ground that both parties knew that the property was of much greater value than that stated in the contract, and arbitrarily inserted a sum grossly disproportionate to the true value solely for the purpose of limiting the amount of the carrier's liability.

Counsel for plaintiff relies on *Moulton* v. *St. Paul, M. & M. Ry. Co.*, *supra*, and *Boehl* v. *Chicago, M. & St. P. Ry. Co.*, *supra*, as settling the law in this state in his favor. The *Moulton* Case, for a reason already suggested, is not in point, and in that very case this court recognized the right of the parties to agree upon the value of the property, or to fairly liquidate the damages in case of loss in accordance with the supposed value, and also recognized the right of the carrier to require the disclosure by the shipper of the value of the property, to the end that proper care might be taken of it, and that the amount of charges for transportation might be fixed. The *Boehl* Case makes no allusion to any such stipulation in the contract, and contains nothing to indicate that the point was the basis of the decision, or even in the mind of the court.

A reference to the record in that case shows that the contract contained a stipulation somewhat similar to that in this case, but that, while the point that plaintiff's recovery should be limited to the amount specified was made on the trial by a request to charge, the prominent issue, aside from that of the defendant's negligence, was whether the alleged contract containing this provision was in fact plaintiff's contract, and the briefs of counsel show that the point was barely alluded to on the argument in this court; hence we do not consider the case as an authority controlling the present one.

Counsel for plaintiff have argued this case on the assumption that defendant knew, at the time of the shipment of the property, that

these horses were actually worth $2,100, but there is no warrant for this. It by no means follows, because defendant now knows and admits their value to have been $2,100, that it knew that fact when it received the property. What would be the effect if defendant then knew that fact is a question not now before us, and which we are not called on to decide. We may say, however, that if both parties, knowing the actual value of the property, arbitrarily insert in the bill of lading a much less sum, grossly disproportionate to the real value, for the purpose of limiting the liability of the carrier for the consequences of its negligence, the stipulation would be invalid.

Order reversed.

VANDERBURGH and COLLINS, JJ., absent, took no part.

(Opinion published 54 N. W. Rep. 1072.)