(122 N. W. 390.)

---

T. M. HANSON v. GREAT NORTHERN RAILWAY COMPANY.

Opinion filed March 9, 1909.

Rehearing denied May 15, 1909.

**Carriers — Contract for Carriage of Freight — Law of Place of Contract.**

1. A contract entered into for carriage of freight from a point in one state to a point in another state will, in the absence of proof of a contrary intention, be governed by the law of the place where the contract was entered into.

**Same — Public Policy — Law of the Forum.**

2. Where, however, such contract is against the established public policy of this state, it will not be enforced by our courts.

**Evidence — Presumptions as to Law in Another State.**

3. In the absence of proof to the contrary, the presumption prevails that the common law is in force in a foreign jurisdiction.

**Carriers — Injury to Freight — Limiting Liability.**

4. By statute in this state a common carrier may, by special contract signed by the consignor or consignee, limit or modify its common law liability, except that it cannot exonerate itself from liability for loss or damage resulting from the negilgence, fraud or willful wrong of itself or servants. Prior to the enactment of chapter 57, page 83, Laws 1907, it was lawful by special contract, when signed by the consignor or consignee, to exonerate such carrier from liability except for its or its servants' gross negligence, fraud or willful wrong.

**Same — Stipulations as to Value of Freight.**

5. Such special contract will not be enforced except when fairly entered into and when just and reasonable in the eye of the law. Stipulation fixing a mere arbitrary valuation upon goods for the sole purpose of limiting the carrier's liability in case of loss or damage are not just and reasonable in the eye of the law.

**Carriers — Limiting Liability.**

6. Whether the carrier may by special contract fixing the value of goods for shipment, when fairly made, limit or restrict its liability for negligence to the value thus agreed upon, is not determined.

**Same — Public Policy.**

7. Tested by the foregoing rules, the special contract in the case at bar, which fixes the value of the household goods at $5 per hundredweight, is, for reasons stated in the opinion, contrary to the public policy of this state, and hence will not be enforced here.

Appeal from District Court, Nelson county; *Templeton*, J.

Action by T. M. Hanson against the Great Northern Railway Company. Judgment for plaintiff, and defendant appeals.

Affirmed.

*Murphy & Duggan,* for appellant.

Party in charge of goods for shipment has full authority to contract for such shipment. 1 Hutchinson on Carriers, 457; Armstrong v. Chicago, M. & St. P. Ry. 54 N. W. 1059; California Powder Works v. Atlantic & P. R. Co., 45 Pac. 691, 36 L. R. A. 648.

By special contract a carrier may grant different rates for goods of different value; and when he represents his goods of lower value, and takes a lower rate, he is bound by his contract. 1 Hutchinson

on Carriers, 401-4, 408; St. Louis v. Weekly, 8 S. W. 134; Hart v. Penn, Ry. Co., 112 U. S. 331, 5 S. Ct. Rep. 151; Louisville & N. R. v. Sherrod, 4 So. 29; Coupland v. Housatonic Ry. Co., 23 Atl. 870-3; Jennings v. Smith, 106 Fed. 139; Met. Trust Co. v. Ry. Co., 107 Fed. 628; McFalane v. Express Co., 137 Fed. 982; Railway Co., v. Patrick, 144 Fed. 632; Michelitschke v. Wells Fargo Co., 50 Pac. 847; Pierce v. Southern Pac. Ry. Co., 47 Pac. 847; 52 Pac. 302; Alair v. Northern Pac. Ry. Co., 54 N. W. 1072, 19 L. R. A. 764; Smith v. American Express Co., 66 N. W. 479; O'Malley v. Gt. N. Ry. Co., 90 N. W. 974; 1 Hutchinson on Carriers 426.

A contract for lower freight in consideration of lower valuation of goods shipped, is valid, unless void for fraud, or grossest and most wilful negligence. Hart v. Penn. Ry. Co., 112 U. S. 331, 5 Sup. Ct. Rep. 151; Smith et al., v. Waalkes, 66 N. W. 479; Coupland v. Housatonic Co., 23 Atl. 870-3; Muser v. American Express Co., 1 Fed. 382; Pacific Express Co., v. Foley, 46 Kan. 457, 26 Am. St. Rep. 107; Hill v. Boston Ry Co., 144 Mass. 284, 28 A. & E. Ry. Cas. 87; J. J. Douglas Co. v. Minn Tr. Ry. Co. 62 Minn, 288, 64 N. W. 899; Duntley v. Boston Ry. Co., 66 N. H. 263; Durgin v. American Exp. Co., 66 N. H. 277; Ballou v. Earle, 17 R. I. 441, 33 Am. St. Rep. 881; Johnstone v. Richmond R. Co., 39 S. C. 351; Starnes v. Louisville Ry. Co., 91 Tenn. 516, 19 S. W. 675; Richmond D. R. Co. v. Payne, 86 Va. 481, 10 S. E. 749.

*Frich & Kelly,* for respondent.

Contracts exonerating common carrier from liability for gross negligence, fraud or willful wrong of himself or his servants, are void, Rev. Codes 1905, Sec. 5678; Ry. Co. v. Beasley, 3 L. R. A. (N. S.) 183; McCune v. The B. C. R. & N. Ry. Co., 3. N. W. 615; Davis v. Chicago R. I. & P. Ry. Co., 49 N. W. 77; Brush v. Ry. Co., 43 Ia. 554; Lucas v. Burlington C. R. & N. Ry Co., 84 N. W. 673; Express Co. v. Owens, 8 L. R. A. (N. S.) 369, 41 S. 752; Railway Co. v. Wynn, 14 S. W. 311; Express Co. v. Backman, 28 Ohio St. 156; Hutchinson on Carr., Sec. 250.

Where the actual and contract values are grossly disproportionate, such agreements are void. Liverpool & G. W. Steam Co. v. Insurance Co. of North America, 9 Sup. Ct. Rep. 469; Moulton v. St. P. M. & M. Ry. Co., 16 N. W. 497; Railway Co. v. Hall, 4 L. R. A. 898, 52 S. E. 679; Kansas City St. J. & C. B. Ry. Co.,

v. Simpson, 2 Pac. 821; Everett v. Railway Co., supra; Black v. Goodrich Transportation Co., 13 N. W. 244; O'Mally v. Gt. N. Ry. Co., 90 N. W. 974; Railway Co. v. Hughert, 8 So. 62; Rosenfeld v. D. & E. R. R. Co., 2 N. E. 344; Railway Co. v. Murphy, 53 L. R. A. 720; Central Georgia Railway Company v. Murphy & Hunt, 53 L. R. A. 720; Chicago & N. W. Ry. Co. v. Chapman, 24 N. E. 417.

Where a carrier of goods under a special contract limiting its liability, it is liable as insurer by abandoning the shipment at a point short of its destination. 6 Cyc. 384, 397; Pavitt v. Railway Co., 25 Atl. 1107; Seavey v. Union Transit Co., 82 N. W. 285; Ry Co. v. Allison, 59 Tex. 193, 12 A. & E. Ry. Cas. 28; Ry. Co., v. Davis, 2 Willson 195; Stewart v. Railway Co., 47 Iowa 229; Robinson v. Merchant's Disp., 45 Iowa 470; Disp. Co. v. Johnson, 11 S. W. 441; Rawson v. Holland, 59 N. Y. 611; Maghee v. Railroad Co. 45 N. Y. 514; Condict v. Railroad Co., 54 N. Y. 500, and cases cited; Cassilay v. Young, 39 Am. Dec. 505.

FISK, J. Plaintiff had judgment in the court below pursuant to a verdict directed by the court, and this appeal is from such judgment and from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

The facts are not seriously in dispute, and are substantially as follows: Plaintiff, being the owner of certain household goods, a list of which appears in the complaint, had the same taken from his home in Minneapolis by Boyd Storage & Transfer Company, and by them packed and crated for shipment and shipped to him at Tolna, N. D. He paid them a lump sum of $23 for packing, hauling, shipping, and freight charges. The storage company's drayman delivered the goods to the Minneapolis freighthouse of the defendant for shipment to Hanson at Tolna. The goods were weighed, weighing 1,540 pounds as packed. Anderson, the teamster for the Boyd Company, caused the shipment to be made in the name of Boyd Transfer & Storage Company, as consignor, to T. M. Hanson, as consignee. At that time the regular freight rate on goods of this class from Minneapolis to Tolna was 1½ times first class, of $1.41 per 100 pounds. Defendant also had a special western rate, called the "emigrants' movable rate," from Minneapolis and other specified points to North Dakota, on household goods of intending settlers, when the shipment is made at the

owner's risk, and at a declared valuation of $5 per 100 pounds; this rate being only 35 cents per 100 pounds. The goods were shipped at the declared valuation of $5 per 100 pounds, and at the rate of 35 cents per hundredweight. In addition to the ordinary freight receipt, a special contract was prepared by defendant's agent and executed by Anderson, the drayman, which special contract is hereafter set out in full. Plaintiff proved a failure on defendant's part to deliver the goods, an seeks to recover for breach of the contract of shipment, alleging the value of the goods to be $782.67 instead of $77, the value declared in the special contract. At the close of the trial, defendant tendered judgment for $77, and the trial court, on plaintiff's motion, directed a verdict for $759,77, being the actual value testified to by plaintiff.

Appellant's counsel have assigned numerous alleged errors of law which they ask this court to review, but it will not be necessary to notice them in detail. As we view the questions involved, they may be classified into three propositions, as follows: (1) Is plaintiff legally bound by the action of the Boyd Transfer & Storage Company through its employe, Anderson, in entering into the special contract limiting the common carrier's liability? (2) Conceding Anderson's implied authority to make the same, is said special contract valid? (3) Under the facts has defendant forfeited its right to rely upon and enforce the provisions of such special contract?

If the second proposition is decided in the negative, such decision will obviate the necessity of passing upon the other propositions. Hence, we will proceed to consider the validity of this special contract. The same was entered into in the state of Minnesota and, under the weight of authority, is governed by the law of that state. Liverpool, etc., Steam Co. v. Insurance Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788, and numerous other cases cited in note on pages 125, 126, 88 Am. St. Rep. Notwithstanding this fact, however, we understand the rule to be that the same will not be given effect in the courts of this state if it is against the established public policy here. 11 Cur. Law, 529, citing Carter v. Southern R. Co., 3 Ga. App. 34, 59 S. E. 209; Atlanta, etc., R. Co. v. Brooms, 3 Ga. App. 641, 60 S. E. 355; International, etc., R. Co. v. Van Devanter, 107 S. W. 560. It does not appear that a statute exists in Minnesota relating to the right of a common carrier to limit its common-law liability in case of loss or damage to property in its cus-

tody. Hence it is presumed that the common-law rule is in force there. Rev. Codes 1905, § 7317, subd. 41. What is the public policy in North Dakota with reference to such contracts?

In many jurisdictions it is necessary to look to the decisions of the courts to ascertain its public policy, as they have no legislative declaration with reference thereto. Not so here, as the Legislature has seen fit to settle the question by express statute. See chapter 59 of the Civil Code, being sections 5672 to 5701, inclusive, Rev. Codes 1905. Section 5677 provides: "The obligation of a common carrier cannot be limited by general notice on his part but may be limited by special contract." The next section provides: "A common carrier cannot be exonerated by any agreement made in anticipation thereof from liability for the gross negligence, fraud or willful wrong of himself or his servant." This section was amended in 1907 by eliminating the word "gross." See chapter 57, p. 83, Laws 1907. Such amendment is not material, however, as plaintiff's cause of action arose prior to its enactment. And the following section provides: "A passenger, consignor or consignee by accepting his ticket, bill of lading or written contract for carriage with knowledge of its terms, assents to the rate of hire, the time, place and manner of delivery therein stated. But his assent to any other modification of the carrier's rights or obligations contained in such instrument can only be manifested by his signature to the same." These sections were taken from the original Field Civil Code and were intended to provide a settled rule of construction upon this subject, the decisions respecting which were theretofore apparently in hopeless conflict. As said by Chief Justice Tripp in Hartwell v. Northern P. E. Co., 5 Dak. 473, 41 N. W. 735, 3 L. R. A. 342; "The decisions of the courts have varied, and are now conflicting, as to whether the common-law liability of the carrier may be limited; (1) By notice brought home to the party; (2) by special acceptance of goods for carriage; (3) by express contract between the parties. There is much diversity of opinion of the courts how far such liability may be restricted or limited on grounds of public policy. Our statute has aimed to settle these conflicting decisions." After quoting the foregoing sections, the opinion continues: Section 1263 (section 5679, Rev. Codes 1905), supra, supplements and makes clear section 1261 (section 5677, Rev. Codes 1905). Section 1261 is founded upon the common-law doctrine as announced by Justices Bronson and Cowan in Hollister v. Nowlen,

19 Wend. (N. Y.) 234, 32 Am. Dec. 455, and Cole v. Goodwin, 19 Wend. (N. Y.) 251, 32 Am. Dec. 470, and denies the right of a common carrier to limit his liability by a general notice. It adopts the decision of Dorr v. Navigation Co., 11 N. Y. 485, 62 Am. Dec. 125, in so far as it promulgates the rule of allowing the carrier to limit his liability by special contract; but it limits and qualifies that case in so far as it applies to a case of bill of lading accepted by the shipper by providing in section 1263 that the ship-per who does not sign the bill of lading or contract of car-riage consents only, by accepting it, to the rate of hire, time, place and manner of delivery. If the carrier desires him to assent to any modification of his common-law liabilities contained in such instrument beyond this, he must require it to be signed by the shipper; in other words, passenger tickets, bills of lading, and written contracts for carriage are not 'special contracts' within the meaning of section 1261, that can limit the obligations of the com-mon carrier, unless they are signed by the passenger, consignor, or consignee. These two sections prescribe the manner in which the liability of the common carrier may be limited and section 1262 (section 5678, Rev. Codes 1905) prescribes the extent to which that liability may be limited. It limits the right of parties in ad-vance of carriage to agree to exonerate from liability for gross negligence, fraud, or willful wrong of the carrier of his servant. All contracts to relieve from gross negligence, fraud, or willful wrong on the part of the carrier or his servants are, by the terms of this statute, expressly prohibited. The object of this section is ob-vious. They settle for this territory the conflicting decisions of the common law. They make unnecessary any discussion of the better rule, worked out by the learned decisions, to meet a fancied neces-sity for modification of that laid down by the older cases."

We have thus quoted at length from the foregoing opinion as the same clearly sets forth our views as to the proper construction of the provisions of our Code, supra, and nothing need be added by us. The state of California has similar statutory provisions, and the Supreme Court of that state, in the very recent decision of Donlon Bros. v. Southern Pacific Co., 151 Cal. 763, 91 Pac. 603, 11 L. R. A. (N. S.) 811, gave expression to the same views. We quote: "At common law a common carrier might make any other contract relative to the carriage of property intrusted to it, save one exempt-ing it from liability for any kind of negligence. This rule was

founded upon considerations of public policy; it being deemed derogatory thereto to allow a common carrier to contract against its own negligence, because to permit this had a tendency to promote negligence. But, as far as ordinary negligence is concerned, the rule at common law has been abrogated by our Civil Code (section 2174) to the extent that the shipper and carrier may make a contract for the purpose of limiting the liability of the latter therefor The prohibition of the common law against a carrier limiting his liability for any kind of negligence in declared in this state by section 2175 only to apply to the limitation for gross negligence; but, in so declaring, our statute has added nothing to the restrictive force of the common-law rule. Declaring the same rule as it existed at common law, and nothing more, the section should not be construed as restricting the right of contract to any narrower compass than the common law restricted it." The court then holds that section 2175 of the California Civil Code, which is the same as section 5678 of the Revised Code to this state for 1905, should not be construed as restricting the right of contract as to an agreed valuation of property for the purpose of fixing responsibility any further than it was restricted under the rule at common law, and that at common law such agreed valuation was not considered a limitation of liability for either ordinary or gross negligence. Upon this question it is said: "In jurisdictions in this country, where the common-law rule obtains, it is the prevailing doctrine that there is a wide distinction between a contract by a carrier providing for exemption from liability for its negligence, and a contract fairly entered into whereby, in consideration of a reduced rate of compensation for the transportation, the shipper and carrier agree upon a fixed valuation therefor under which the responsibility of the carrier in case of loss shall be measured." Numerous authorities are cited and reviewed by the court, but we deem it unnecessary to collate them in this opinion.

The contract in question, therefore, in so far as it does not attempt to limit defendant's liability for loss or damage occasioned by gross negligence, fraud, or willful wrong of itself or its servants, is not contrary to the public policy of this state as expressed in the provisions of the Code above cited; but to the extent, if any, that it attempts otherwise to limit such liability, the same will not be enforced by the courts of this state. The so-called "special contract" is as follows: "Property Release. Consignee and destination, Theo. M. Hanson, Tolna, N. D. Description of Articles. 1

lot H. H. goods O. R. Val. Rel. to $5.00 per cwt. In consideration of the Great Northern Railway Company having received the above property from Boyd Trf. & Stg. Co., consigned to Theo. M. Hanson for transportation on their line from Mpls. station to Tolna, N. D. I do hereby release the said company, * * * from all liability from * * * loss or damage of whatever kind except such as may occur from negligence of the company by collision of trains or by cars being thrown from the tract in course of transportation. And for the further consideration of the lower rate hereby secured I do hereby declare the value of all property and goods shipped under this contract to be $5.00 per cwt., said lower rate being given by the G. N. Ry. Co. solely upon the basis of said valuation. And in consideration of said reduced rate, I further agree that, in case of loss or damage to said property, or to any part thereof, my re- covery for such loss or damage shall not exceed the above valuation. I do also release said company from all loss or damage that may occur to any freight shipped by me, above entered, after it has been unloaded from the cars at Tolna station on their line. [Signed] Boyd Transfer Co., by Anderson."

It is entirely clear that the first paragraph of said contract, which attempts to exonerate the company from all liability for loss or damage of every kind, except such as may occur from negligence of the company by collision of trains or by cars being thrown from the track, is void both under the common-law rule and the statute of this state, and this is also true with reference to the third para- graph. It remains to consider the validity of that portion of the contract whereby a declared valuation of $5 per hundredweight of the goods in question is set forth, with the agreement that in case of loss or damage to said property a recovery therefor shall not exceed such declared valuation.

Respecting the validity of such agreed valuation stipulations, there is much diversity of opinion among the courts of this country; but by the weight of authority such stipulations are upheld, provided the same are reasonable in the eyes of the law and are fairly and honestly made as a basis for the carrier's charges and responsibil- ity, even where the loss is caused by the negligence of the common- carrier; the theory of such decisions being that such a stipulation or agreement is a just and reasonable mode of securing a due propor- tion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against ex-

travagant and fanciful valuations. It is said that such limitations of value in no way exempt the carrier from or limit his liability for negligence; their only effect being to liquidate the amount for which the carrier, in case of loss shall be answerable, whether through his negligence or otherwise. The leading case upon this subject is Hart v. Penn. R. R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, in which Mr. Justice Blachford used the following language: "There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss. It is just to hold the shipper to an agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier. The effect of the agreement is to cheapen the freight and secure the carriage if there is no loss, and the effect of disregarding the agreement after a loss is to expose the carrier to a greater risk than the parties intended he should assume." The other authorities following the rule of the federal court are too numerous to cite. The following are a few of them: Cau v. Tex. Pac. R. Co., 194 U. S. 427, 24 Sup Ct. 663, 48 L. Ed. 1053; Donlon Bros. v. Southern Pac. Co., 151 Cal. 763, 91 Pac. 603, 11 L. R. A. (N. S.) 811; Coupland v. Hous. R. Co., 61 Conn. 531, 23 Atl. 870, 15 L. R. A., 534; Central R. Co. v. Murphey, 113 Ga. 514, 38 S. E. 970, 53 L. R. A. 720; Rosenfeld v. Peoria, etc., Ry. Co., 103 Ind. 121, 2 N. E. 344, 53 Am. Rep. 500; Pacific Express Co. v. Foley, 46 Kan. 457, 26 Pac. 665, 12 L. R. A. 799, 26 Am. St. Rep. 107; Hill v. Boston, etc., R. Co., 144 Mass. 284, 10 N. E. 836; Graves v. Exp. Co., 176 Mass. 280, 57 N. E. 462; Smith v. Am. Exp. Co., 108 Mich. 572, 66 N. W. 479; Alair v. N. P. R. Co., 53 Minn. 160, 54 N. W. 1072, 19 L. R. A. 764, 39 Am. St. Rep. 588; Murphy v. Wells Fargo & Co. Exp., 99 Minn. 230, 108 N. W. 1070; Starnes v. Louisville, etc., R. R. Co., 91 Tenn. 516, 19 S. W. 675; Richmond, etc., D. R. Co. v. Payne, 86 Va. 481, 10 S. E. 749, 6 L. R. A. 849; Ullman v. Chicago, etc., Ry Co., 112 Wis. 15, 88 N. W. 41, 88 Am. St. Rep. 949. The rule is announced in many of said authorities that such limitations, in order to be valid, must be made with reference to a value to which the charges and responsibilities of the carrier shall be proportioned. Mere arbitrary limitations or stipulations are not upheld. If it appears that the object of such stipulations is to secure a fair and reasonable value upon

which to base the terms of the contract of shipment, they will be sustained; but, on the contrary, if it appears that the purpose was merely to place a limit to the carrier's liability in case of loss or damage to the goods, the same will be held void. Such agreements entered into for the former purpose are held reasonable, but unreasonable if for the latter purpose. The latter is a mere attempt on the part of the carrier to limit his liability for losses caused by his own negligence, and as to losses so caused such agreements are held unreasonable and void on account of such attempted limitation of liability. Alair v. N. P. Ry. Co., 53 Minn, 160, 54 N. W. 1072, 19 L. R. A. 764, 39 Am. St. Rep. 588; Ullman v. Chicago, etc., Ry. Co., 112 Wis. 15, 88 N. W. 41, 88 Am. St. Rep. 949; Donlon Bros. v. Southern Pac. Co. 151 Cal. 763, 91 Pac. 603, 11 L. R. A. (N. S.) 811: See, also, Chicago N. W. Ry. Co. v. Chapman, 133 Ill. 96, 24 N. E. 417, 8 L. R. A. 508, 23 Am. St. Rep. 587; Rosenfeld v. Peoria etc., Ry. Co., 103 Ind. 121, 2 N. E. 344, 53 Am. Rep. 500; Gardner v. Southern Ry. Co., 127 N. C. 293, 37 S. E. 328.

The courts are not agreed regarding the test to be applied in determining the validity of such contracts or stipulations; some holding a stipulation void which merely fixes a maximum value on the property limiting recovery in case of loss to the sum not exceeding such amount, upon the ground that a stipulation of this kind is a mere attempt to limit the carrier's liability, and hence is solely in the interest of such carrier. Other courts hold that there is no distinction on principle between such a stipulation and one by which the parties expressly agree to a certain fixed valuation. Among those holding to the former rule are Conover v. Pac. Exp. Co., 40 Mo. App. 31; Kellerman v. Kans. City, etc., Co., 68 Mo. App. 255; St. Louis, etc., R. Co. v. Sowell 90 Tenn. 17, 15 S. W. 837; Eells v. St. Louis Ry. Co., (C. C.) 52 Fed. 903. Among those holding to the latter rule are Alair v. N. P. R. Co., 53 Minn, 160, 54 N. W. 1072, 19 L. R. A. 764, 39 Am. St. Rep. 588; Ullman v. Chicago etc., Ry. Co., 112 Wis. 15, 88 N. W. 41, 88 Am. St. Rep. 949.

While there is some contrariety of opinion also on the question of the validity of such stipulations depending upon whether the value is fixed by the shipper himself or inserted by the carrier under the prevailing rule no such distinction is drawn. The true test seems to be whether the stipulation was inserted and agreed to in the interest of the carrier for the mere purpose of limiting his liability in case of loss or damage, or whether it was inserted for the purpose

of fixing the rate of compensation for the carriage of the property and the proportionate responsibility of the carrier in the performance of the contract of carriage. The Alabama court has adopted another test as to the validity of such stipulations, which is that the value stipulated or agreed upon must not be disproportionate to the actual value of the property. Speaking upon this question in the recent case of Southern Ry. Co. v. Jones, 132 Ala. 437, 31 South. 501, Chief Justice McClellan says: "In determining whether a stipulation is void as being against public policy, there is no room for inquiry into the knowledge, information, or intention of the parties. The question is not what the parties knew or intended, but what is the effect of the stipulation; not whether the parties intended evil or knew their act was hurtful to the public, but whether to allow and uphold such contracts would be fraught with wrong and injury to the people of a character from which it is the province and the duty of the government to protect them. So it is immaterial, when a carrier has stipulated for the limitation of damages resulting from his negligence to a greatly disproportionately small valuation of the property carried, whether he knew or was informed of its real value or not. It is against the public good in respect of a governmental concern that he should be allowed to make such stipulation under any circumstances, and to allow it to stand in any instance or upon any consideration would be to emasculate the principle of public policy obtaining in the premises, and to leave the public exposed to all the uncertainties incident to inquiries into what carriers intended, or knew or had been informed as to the real value of the property transported by them." See, also, to the same effect, the very recent case of South. Exp. Co. v. Owens, 412, 41 South. 752, 8 L. R. A. (N. S.) 369, 119 Am. St. Rep. 41, where the same court reviews the authorities at length and announces the better doctrine to be that a carrier cannot, by a contract fixing the value of the property carried in relation to the amount of freight paid, limit its liability pro tanto for losses caused by its own negligence.

The doctrine thus announced, however, seems to be opposed to the weight of authority, and we think the sounder rule is that announced in Alair v. N. P. R. Co., 53 Minn, 160, 54 N. W. 1072, 19 L. R. A. 764, 39 Am. St. Rep. 588; Donlon Bros. v. So. Pac. Co., 151 Cal. 763, 91 Pac. 603, 11 L. R. A. (N. S.) 811, and other cases above cited, holding in effect that a mere difference between

the value as agreed upon and the actual value of the property, however wide such difference may be, is not a controlling test as to the validity of such stipulations, and that the true test is whether the stipulation was fairly entered into and is "just and reasonable in the eye of the law." The fixing of a mere arbitrary sum, without any reference to the real value, and merely for the purpose of fixing the limit of the carrier's liability, will not ordinarily be held to be "just and reasonable in the eye of the law." The facts in each case must be looked to to determine whether the object of such stipulation was merely to place a limit on the carrier's liability, and therefore invalid, or whether the object was, as before stated, to fairly and honestly fix a value as a basis of the carrier's charges and responsibility, and hence valid as a "reasonable mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations."

Another line of very respectable authorities adhere to the rule that the carrier will not be permitted, by any contract with the shipper to limit his liability for loss caused by his negligence to anything less in amount than the actual damage suffered by the shipper. Among the courts so holding are Illinois, Kentucky, Mississippi, Nebraska, Ohio, Pennsylvania, Tennessee, and Texas. The following are a few of the cases: Chicago, etc., Ry. Co. v. Chapman, 133 Ill. 96, 24 N. E. 417, 8 L. R. A. 508, 23 Am. St. Rep. 587. Chicago, etc., Ry. Co. v. Calumet Stock Farm, 194 Ill. 9, 61 N. E. 1095, 88 Am. St. Rep. 68 (containing a very valuable and exhaustive note covering every phase of the subject of the limitation of a carrier's liability) ; Chicago, etc., Ry. Co. v. Witty, 32 Neb. 275, 49 N. W. 183, 29 Am. St. Rep. 436 ; U. S. Exp. Co. v. Backman, 28 Ohio St. 144 ; Adams Exp. Co. v. Holmes (Pa.) 9 Atl. 166 ; Houston, etc., Ry. Co. v. Davis, 11 Tex. Civ. App. 24, 31 S. W. 308. For other cases so holding, see above note in 88 Am. St. Rep., at page 112.

We are not required in the case at bar, to express our views as to which rule announced by the foregoing two lines of authorities is the sounder, for we are agreed that, applying the test adopted by the courts holding to the first rule above stated, the stipulation in question is not "just and reasonable in the eye of the law," and hence is not only contrary to the public policy of this state, but is also contrary to the well-established rule of the common law, and

will not be enforced. In the Hart Case, supra, it was said: "The agreement as to value in this case stands as if the carrier had asked the value of the horse, and had been told by the shipper, the sum inserted in the contract." When tested by the rule announced in the Hart Case and other cases holding to the same doctrine, it is apparent that the contract in question cannot be sustained. In the first place, the property consists of household goods, and there is not a scintilla of testimony in the record tending to show their actual value, aside from the plaintiff's testimony at the trial. The cartman in the employ of the storage and transfer company is not shown to have possessed any knowledge of their value whatsoever, nor does it appear that his employer or any of the members of the storage company possessed any such knowledge. It is not contended that either of the parties who were instrumental in making or causing such special contract to be made had any knowledge whatsoever upon the subject of the actual or supposed or the approximate value of the property. The carrier's servant who prepared said contract inserted a mere arbitrary sum of $5 per hundredweight as the value without any inquiry from anyone, or without any investigation with the view of determining the approximate value thereof. . It cannot be said respecting household goods, as was said by Judge Mitchell in the Minnesota case, supra, regarding horses, that "every one may be presumed to know approximately the average value." We cannot say, as was said by Judge Mitchell in said case, that we are justified in taking judicial notice of the fact that the maximum value placed by this contract upon these goods is approximately that of average household goods. In view of these facts, how can it be contended that such stipulation is "just and reasonable in the eye of the law?" The most that can be said of it is that it is a mere arbitrary fixing of value by the carrier's servant acquiesced in by the transfer company's drayman, who had no knowledge as to the value nor any specific instructions from his employer with reference to fixing value—facts which were or should have been within the knowledge of the defendant's servant.

Our conclusion is that such special contract, under the facts in the case at bar, is void in its entirety, both at common law and under the established rule of public policy of this state, and hence the same cannot avail defendant as a defense to plaintiff's cause of

action. This being true, we are not required to notice the other questions raised by appellant.

The judgment and order appealed from are correct, and are, accordingly, affirmed. All concur.

Rehearing denied May 15, 1909.