## STRONGE & WARNER COMPANY v. H. CHOATE & COMPANY.[1]

### April 29, 1921.

### Nos. 22,206, 22,210.

**Relief for breach of contract limited — injunction — damages.**

Plaintiff was conducting a retail millinery business in defendant's dry-goods department store, under a contract which provided that plaintiff should conduct its department with the same degree of refinement and energy as the other departments in the store were conducted. Plaintiff's business was conducted ostensibly as if owned by defendant. On learning that plaintiff was to open a similar business in a competing department store, defendant gave notice that its contract with plaintiff would terminate before its expiration. Plaintiff sued to restrain defendant from so doing and for damages. Before trial plaintiff removed because of defendant's interference. From the judgment awarding damages until the commencement of suit, and restoring possession, both parties appeal. It is *held*:

[1]Reported in 182 N. W. 712.

(1) The nature of the contract and the facts were such that, if plaintiff was entitled to any relief at all, it should have been limited to compensation in damages.

(2) The finding that plaintiff had failed to perform a substantial part of the contract precluded a court of equity from granting relief.

(3) In the absence of the finding mentioned, plaintiff would have been entitled to recover under the allegations of the complaint for the loss of profits during the whole time that it was deprived of doing business under the contract.

(4) The evidence did not show the contract to have been procured by fraud or collusion so as to justify a denial of relief.

(5) Neither the contract, nor plaintiff's manner of doing business, nor the entry of a like contract with defendant's competitor were in violation of sections 8595, 8903, 8973 or 8974, G. S. 1913.

(6) The record fails to show that, either in obtaining the contracts under which plaintiff did business or in its conduct thereof, there was an unlawful plan to stifle competition or to fix prices or to combine to defraud or mislead the public.

Action in the district court for Winona county for restoration of rights under a certain contract, for a permanent injunction restraining defendant from continuing a millinery establishment other than one managed and conducted by plaintiff, as in said contract provided, and for $5,800 damages. The case was tried before Childress, J., who made findings. Plaintiff's motion for amended findings and conclusions of law was granted in part and defendant's motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, plaintiff appealed on the ground that the award of damages was insufficient, and defendant appealed from the whole judgment. Reversed.

*Webber, George & Owen,* for Stronge & Warner Co.

*Brown, Abbott & Somsen* and *E. V. Knauf,* for H. Choate & Co.

HOLT, J.

Both parties are corporations engaged in the mercantile business. Plaintiff, besides conducting a wholesale millinery establishment at St. Paul, Minnesota, also makes contracts with so-called department stores in the larger cities of this and other states, whereby it carries on a retail millinery business as a department in such stores and ostensibly in their names. Defendant has for a long time owned and operated a high class dry goods department store at Winona, Minnesota, and, for the last 12 years, plaintiff has had a retail millinery department therein, occupying

a part of the ground floor. This business has run in the name of defendant under written agreements renewed from time to time, the last one being executed in December, 1918, to run until December 31, 1921. Plaintiff is termed lessee and defendant lessor, but an attentive examination of the instrument discloses that it is not the conventional lease. It is more in the nature of a contract under which business is to be carried on for the mutual advantage of the parties. After stating that the contract shall run for three years beginning January 1, 1919, and terminate December 31, 1921, it reads:

"That the lessee agrees to conduct a millinery department in the space now occupied as such and conduct and maintain with the same degree of refinement and energy as the other departments in the same building and to pay to lessor a rental of One Hundred and Twenty-five ($125.00) Dollars per month and in addition thereto five (5%) on the net credit sales as O. K.'d by lessor.

"That lessor agrees during the time of this lease to conduct and maintain the same general business in the same general volume as is being conducted at the present time.

"That all receipts of cash and credits shall be turned into the office of lessor as is done in the regular order of business.

"That lessor agrees to furnish lessee a monthly statement showing all cash and credit sales, expense items, such as clerk hire, express and other incidentals paid out for lessee as authorized by lessee, and mail to lessee check for the difference between the expense of the department and the sales, it being understood that lessor shall include among the expenses its rent of One Hundred and Twenty-five ($125.00) Dollars per month, as related above.

"That lessee shall make contracts for help in said department and salaries to be charged to lessee." [A paragraph relating to show cases and fixtures omitted.]

"That lessor shall furnish free of further charge to lessee sufficient light, heat, delivery service and other service as is furnished by the store at the present time. All other expenses pertaining to the department, such as merchandise, insurance, taxes, salaries, freight and express, etc. shall be paid by lessee.

"That lessee shall have the exclusive use of the west window of the east part of the building, except at such times as when hats are displayed

on other windows, or in case of a change of the front of the store by lessor, lessor may change the above assigned show window space to some other equally large and favorably located show window space."

Friction arose, and when, in the latter part of July, 1919, defendant learned that plaintiff had entered a similar contract with a rival department store, the Interstate Mercantile Company, located a block from defendant's store, plaintiff was notified that its contract would be terminated on August 1, 1919. On and after that date defendant let another millinery retail dealer into the space occupied by plaintiff and so interfered that doing business there became impossible for plaintiff, and it removed its goods. Before so removing, and on or about August 5, this action was instituted by plaintiff to be restored to its rights, to enjoin defendant from conducting a millinery establishment in the store other than one conducted by plaintiff under its contract, and for $5,800 damages. The defendant answered that plaintiff had breached the contract by failing to conduct its business as agreed to, and that the contract with plaintiff was entered with the understanding that it should not involve defendant in any transaction that might appear to be in restraint of trade, or to fix prices, or to limit competition, but that, by entering a similar contract with the Interstate company, there necessarily resulted a restraint of trade, a limitation of competition and a fraud on the public. The trial resulted in findings awarding plaintiff $100 damages and restoration to its rights under the contract. From the judgment entered, both parties appeal, plaintiff's appeal being limited to the inadequacy of the damages.

There is no serious dispute as to the material facts. The court found "that during the year 1919 said plaintiff did not conduct said millinery department in said defendant's store with the same degree of refinement and energy as the other departments in said defendant's store were conducted." This finding is not assailed, and the evidence amply sustains it. It was also found that defendant wrongfully "evicted" plaintiff; that the eviction "was not malicious, but was the result of the advice of counsel," and that plaintiff sustained damages "up to the time this action was commenced by reason of said eviction in the sum of $100."

Amended findings were also made to the effect that, under plaintiff's contracts, its millinery retail business is conducted and advertised as a department belonging to the store or establishment where it is located;

149 M.—3.

that during the whole time of plaintiff's connection with defendant the retail millinery department has ostensibly been carried on as the business of defendant, and plaintiff has profited from the good business reputation and good will possessed by defendant; that the Interstate Mercantile Company also has an extensive trade in the same lines and the same territory as defendant, and for many years has maintained a retail millinery department in its store; that these two department stores enjoyed "a large portion of the trade in the goods sold by them including most of the millinery trade of said city," which, however, up to August 1, 1919, had been owned and operated by the two different parties; that, without the knowledge or consent of defendant, a contract was made between plaintiff and the Interstate Mercantile Company similar to the one with defendant, and under which plaintiff since the last named date has carried on a retail millinery department in the Interstate company's store and ostensibly in its name; that when defendant learned of the last mentioned contract, and on or about July 26, 1919, it notified plaintiff that it would and did on August 1, 1919, terminate all contract relations with plaintiff and repossessed itself of the premises let to plaintiff; and that the millinery business of plaintiff in defendant's store from the fall of 1917 to August 1, 1919, returned a net profit of $3,000.

The case was tried seven months after the so-called eviction. Meanwhile a third party had become established in the business plaintiff had had in defendant's store. Unless damages will not afford adequate relief, equity should hesitate to destroy the business of this third party, even were plaintiff entitled to restoration. Whatever injury plaintiff suffered from the termination of the contract, is now beyond repair or recoupment by any attempt to again open its business with defendant, for there remain but a few months of the term. In Brande v. Grace, 154 Mass. 210, 31 N. E. 633, where the landlord by constructing an addition to the building obstructed entirely the view and light of a tenant's rooms, the court refused a mandatory injunction after the addition wall had been constructed, holding that, in view of the early termination of the lease, the remedy for the wrong should be confined to compensation. There, as here, the trial court had refused an injunction pendente lite.

But there are other reasons why the judgment reinstating plaintiff in

defendant's store is wrong. As before suggested, when the terms of the contract are considered, it clearly appears that, notwithstanding the use of the terms lessor, lessee and rent, we have not the ordinary lease of real estate or of rooms or space in a building. It is more in the nature of an arrangement whereby their businesses as to place and certain operating expenses are joined for mutual advantage. It may safely be asserted that neither contemplated that in case of a breach of the contract the court would compel them to continue the relation. Such compulsion, after the parties had come to an open rupture, could hardly fail to be extremely embarrassing and financially detrimental to both. The conditions under which business was to be conducted necessitated friendly co-operation to achieve success. We therefore think the court should not compel specific performance, but give damages if any relief at all was warranted.

Again, as the findings now stand, we cannot see how the judgment could go in favor of plaintiff either for restitution or damages for lost profits. Defendant agreed to conduct and maintain the same general business and volume of business as when the contract was made, and plaintiff agreed to conduct the millinery department "with the same degree of refinement and energy as the other departments" in the store. It is readily seen that these provisions are vital terms of the contract to be mutually kept and performed by the parties in order to make the most of their business arrangement. The conduct of plaintiff's department would reflect on that of the business of other departments in the store and vice versa. The specific finding of plaintiff's nonperformance or violation of the term mentioned ought to bar any relief.

In Ashe-Carson Co. v. Bonifay, 147 Ala. 376, 41 South. 816, the syllabus is: "The complainants having violated the terms of the lease by boxing trees under 10 inches at the butt, they were not entitled to relief in equity under the contract of lease against the lessors for their alleged trespass in cutting and hauling away boxed trees for lumber." The opinion refers to the maxims that he who seeks equity must do equity, and he who comes into equity must come with clean hands, and cites from 1 Pomeroy, Eq. Jur. (2d ed.) §§ 397, 399: "Whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable prin-

ciple, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." See also note 4 A. L. R. 73; Montana Water Co. v. Billings, 214 Fed. 121; Robson v. Bohn, 22 Minn. 410; Karbach v. Grant, 131 Minn. 269, 154 N. W. 1071. We think defendant when sued may assert this defense, although not given as the cause for terminating the contract.

Even were the contract held to create a partnership, a continuance of the relationship should not be compelled in view of the finding referred to, were we inclined to adopt the line of decisions holding that equity will, under certain conditions, interpose for that purpose. The two opposing views on this proposition are well stated and authorities cited in Karrick v. Hannaman, 168 U. S. 328, 18 Sup. Ct. 135, 42 L. ed. 484. See, also, 19 Eng. Rul. Cas. 615.

The foregoing conclusions lead to a reversal of the judgment on defendant's appeal but since the findings of fact are somewhat inconsistent, and at variance with the conclusions of law, it is thought better to direct a new trial than a modification of the findings and judgment. And to that end some questions raised by the appeal, and which will doubtless arise on a new trial, must be decided.

Had the court not found plaintiff guilty of violating a material provision of the contract, damages for defendant's breach should have been awarded. These were not limited to those sustained between the breach and the commencement of the action, but should have included all damages resulting from being deprived of the benefits of the contract for the unexpired term. Kalkhoff v. Nelson, 60 Minn. 284, 62 N. W. 332. The amended complaint is sufficient to let in proof of the loss of net profits. Plaintiff had an established business and net profits were susceptible of satisfactory proof under the doctrine of Goebel v. Hough, 26 Minn. 252, 2 N. W. 847.

Defendant contends that the contract was obtained by fraud and collusion, and, since defendant was not aware of this until disclosed during the trial, it is available as a defense without being pleaded and without having been given as the cause for ending the contract. In Primeau v. Grandfeld, 193 Fed. 911, 114 C. C. A. 549, it is said: "When fraud or illegality is disclosed in a case, public policy requires a court to refuse

its aid irrespective of the state of the pleadings and regardless of the fact that with fraud and illegality absent the plaintiff might appear entitled to relief." The doctrine has no application here, for the record discloses no fraud practiced on defendant. For years the parties had carried on business together and defendant was not averse to continue the same when the present contract was made. That defendant's manager, who took part in making the contract, was hostile to plaintiff and induced the latter to make a peace offering, by discounting a claim it held against him personally, did not serve to make this contract void or voidable, for defendant's president, and not its manager, was the one who ultimately determined the terms of the contract and executed it without any urging or inducement from the manager or any one else.

There is an earnest contention that doing business as contemplated by this contract is unlawful, and clearly so when done by the same party in two competing houses. It is said to offend sections 8595, 8903, 8973, 8974, G. S. 1913, and to work a fraud on the public. We discern no violation of any statute in the terms of the contract, or in the manner in which plaintiff conducted its retail trade. The first section named covers conspiracies to commit an act injurious to public morals, trade or commerce. There surely was no such conspiracy proven. An intention to require sales advertisements to disclose the true owner or seller of the merchandise offered cannot well be ascribed to section 8903. It is aimed rather at misrepresentations of the goods advertised. No claim is made that the name of either plaintiff, or defendant or the Interstate Company, or any other local milliner gave the style, quality or standing to any millinery creation offered for sale by any advertisements in Winona. Nor is any combination or pool agreement to be found in plaintiff's method of doing business under the contract or anything which tends in restraint of trade, or of price fixing or of stifling competition within the prohibition of sections 8973, 8974 as the same, when embodied in chapter 359, p. 487, Laws 1899, were construed in the exhaustive opinion in State v. Duluth Board of Trade, 107 Minn. 506, 121 N. W. 395, 23 L.R.A. (N.S.) 1260.

But, irrespective of the statutes, it is urged that plaintiff's method of doing business is a fraud on the public and courts should lend it no aid. The Interstate Mercantile Company and defendant are competi-

tors in the same field. The public so understands. And it is claimed that plaintiff has taken undue advantage of this situation by operating a noncompetitive department in each store in the name of the store, thus misleading the public to patronize plaintiff under the belief that actual competition exists between the millinery departments in the two stores. The contracts under which plaintiff operates are said to be against public policy. Plaintiff's methods may not be the most ethical. And it may be that the retail millinery business is so susceptible of imposing on the public that those conducting it ought to hoist "the black flag of piracy," as counsel assert, in every city where one party conducts more than one establishment under different names. But we apprehend competition and price are not great factors with the women when the seasons for change of hats arrive. However that may be, the practice for persons of limited capital or special qualifications in certain lines of trade, requiring but little room for operation, to procure space in a large mercantile establishment wherein to operate under some agreement with the establishment and in its name, has become so general in our large cities that courts should hesitate to brand it unlawful, unless there is evidence that evil has resulted in the particular case wherein the practice is assailed. An accepted general business usage is itself strong evidence as to what is in accord with public policy is an observation made in Alair v. Northern Pacific R. Co. 53 Minn. 160, 54 N. W. 1072, 19 L.R.A. 764, 39 Am. St. 588.

We do not sustain the proposition that this record shows plaintiff's manner of doing a retail millinery business in defendant's name or store, or in both its and that of the Interstate company's to have been unlawful or a legal fraud on the public. The obtaining of the one or both of these contracts cannot be construed as an attempt to stifle competition, or fix prices, or as an unlawful combination. Fairbank v. Leary, 40 Wis. 637, cited by defendant, does not sustain its contention, for the contract was held to show no illegality on its face, and it certainly was more susceptible of being construed as designed for wrongful purposes than the one here involved, and this record contains no proof that any of the parties concerned were "in secret league" to affect the market. The burden was on defendant to show the business conducted under the contracts in question to be against public policy. "It must not be forgotten that the

right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare." Baltimore & Ohio S. W. Ry. Co. v. Voight, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. ed. 560.

The judgment is reversed and a new trial directed.