EDWARD C. COLE and Another v. MINNEAPOLIS, ST. PAUL
& SAULT STE. MARIE RAILWAY COMPANY.[1]

January 26, 1912.

Nos. 17,420—(185).

**Shipment of live stock — presumption of negligence.**

In an action against a common carrier to recover for injuries to horses
while in transit, alleged generally to have been caused by rough and negli-
gent handling by defendant, a presumption of negligence arises when plain-
tiff proves delivery to the carrier in good condition and receipt at destination
in an injured condition.

**Same — when accompanied by keeper.**

The fact that the owner or his agent accompanies the horses relieves the
carrier from special care and oversight of the animals, but does not change
the presumption, unless it is shown that the injury was caused by the neg-
ligence of the owner or his agent. The verdict in this case *held* sustained
by the evidence.

**Agreement as to value.**

Where a shipper and carrier fairly and honestly agree as to the value
of the property to be shipped, as the basis of the carrier's charges and
responsibility, and not for the purpose of limiting the amount for which the
carrier shall be liable for losses resulting from its negligence, such agree-
ment is valid, and the values so agreed upon will be the limit of recovery.
In this case it is held that the evidence does not show that the shipper and
carrier agreed on the valuation of the horses.

**Evidence — instructions.**

There were no errors in the rulings on the admission of evidence, in the
instructions to the jury, or in the refusal to give instructions requested.

Action in the district court for Hennepin county to recover $1,400,
damages for injuries to five horses while in defendant's possession
as carrier. The case was tried before Steele, J., and a jury which
returned a verdict in favor of plaintiffs for $575. Defendant's
motion for judgment notwithstanding the verdict or for a new trial

[1] Reported in 134 N. W. 296.
    117 M.—3.

was denied. One ground for the motion of defendant was misconduct on the part of the prevailing party on the trial of the action. The affidavits attached to the notice of motion asserted that in plaintiffs' Exhibit A, mentioned in the opinion, the figure on the exhibit had been changed from 3 to 5 during the course of the trial. From the order denying its motion, defendant appealed. Affirmed.

*John L. Erdall, L. K. Eaton* and *A. H. Bright,* for appellant.
*S. Meyers,* for respondents.

BUNN, J.
This action was brought to recover damages for injuries to five horses, claimed to have been caused by defendant's negligence while the horses were in its possession as carrier.

The complaint alleged that ten horses belonging to plaintiffs were delivered in good condition to defendant at Trout Lake, Wisconsin, to be transported to Minneapolis; that defendant handled the horses roughly and carelessly in transporting them; and that through its negligence five of the horses were bruised, maimed and injured, to plaintiff's damage in the sum of $1,400.

The answer admitted that plaintiffs delivered the horses to defendant for shipment, alleged that it transported them to Minneapolis without negligence, and that the transaction was under and pursuant to the regulations and tariffs of defendant, and a special contract relating to the liability of defendant, which contract was set out in the answer.

The case was tried and submitted to the jury, after defendant's motion for a directed verdict had been denied. The verdict was in plaintiffs' favor in the sum of $575. Defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial, and appealed from the order denying such motion.

1. It is contended that the verdict is not sustained by the evidence. Defendant's argument in this regard may be thus summarized: The complaint charged specific acts of negligence; therefore the burden was on plaintiffs to establish the negligence charged, and proof of the good condition of the horses when delivered to the

carrier, and their delivery by the carrier in an injured condition, is not sufficient to make a prima facie case.    In any event this presumption does not apply to live stock shipments, where the owner or his agent accompanies the stock to look after it.

The argument is unsound for several reasons.    In the first place, the complaint does not allege specific acts of negligence, but alleges generally rough and negligent handling of the horses.    Secondly, there was evidence tending, not only to show the injured condition of the horses when received at Minneapolis, but unusual and severe jolts and bumps during the journey, such as might cause such injuries.    Nor does the fact that an agent of the owner accompanied the stock relieve the carrier from the exercise of care to avoid injuring the animals, or change the rule that a prima facie case of negligence is made when the owner shows the delivery of the property in good condition to the carrier, and that loss or damage has been suffered during its transit.

The carrier is relieved from special care and oversight of the animals when the owner or his agent accompanies them, but where an injury results without the fault of such owner or his agent, and from causes other than inevitable accident, the same presumption of negligence arises as in other cases.    Boehl v. Chicago, M. & St. P. Ry. Co. 44 Minn. 191, 46 N. W. 333.

An examination of the record discloses abundant evidence of serious injuries to the horses while in transit, and there is no suggestion that these injuries were due to any want of care or attention on the part of plaintiff's agent.    In addition there was evidence, as before stated, tending to show severe and unusual bumping and jolting of the cars in the train.    The evidence made a case for the jury, and was sufficient to support the verdict.

2. Defendant contends that in the contract of shipment the parties agreed upon a valuation of $100 upon each horse, and that, as plaintiffs conceded that the five injured horses were worth $350 on their arrival at Minneapolis, plaintiffs were in no event entitled to a verdict for more than $150.    Conceding that the instruction requested

by defendant was sufficient to raise the question, we are of the opinion that defendant's contention is unsound.

It is the law of this state that, if the shipper and carrier agree as to the value of the property to be shipped, and the agreement is made fairly and honestly as the basis of the carrier's charges and responsibility, and not for the purpose of limiting the amount for which the carrier shall be liable for losses resulting from its negligence, such agreement is valid, and the valuations so agreed upon will be the limit of recovery. Alair v. Northern Pacific R. Co. 53 Minn. 160, 54 N. W. 1072, 19 L.R.A. 764, 39 Am. St. 588. But in the case at bar the parties did not stipulate or agree as to the value of the horses. The contract recites that:

"The rates provided in the tariffs of this company are based upon the following value of animals named, to wit:" $100 on each horse, $30 on each cow, etc. It then provides that when the declared value exceeds the above, or when the owner declines to declare the value, an addition to the rate will be made. Then follows this language:

"It is agreed between the owner and shipper of these animals and said railway company that the value [of these animals] does not exceed the amount set forth in this contract. And the shipment covered by this contract is accepted and forwarded subject to such agreed valuation, as follows:

Each horse or pony ................................$——
Each cow ...............................................$——"

The blanks left for the insertion of the valuation agreed upon were not filled in. For all that appears from the contract, the value of the horses shipped was never stipulated or agreed upon. The statement that the rates provided in the tariffs of the company are based upon stated valuations can in no way be construed as an agreement fixing the values of the horses shipped. It is not a statement that the rates charged the shipper were based upon such valuation. Such rates may have been based upon a greater valuation declared by the shipper, or upon his failure to declare the value of the stock.

We hold, therefore, that the trial court correctly declined to instruct the jury on the subject of this contract.

3. Certain assignments of error challenge rulings of the trial court as to the admission of evidence. It was not error to refuse to strike out an offer of plaintiff's counsel to prove certain facts, the objection to which offer was sustained. Nor was it error to receive in evidence Exhibit A, which purported to be a receipt for the horses by the consignee, and had written across the front a statement by a freight inspector of defendant that he had inspected the horses in the consignee's barn and "found 5 horses with one swollen leg each, apparently had rough handling of train in transit." The objection made was that the evidence was "immaterial and irrelevant," and was insufficient to raise the point, which defendant here urges, that it was hearsay.

The claim of "misconduct of counsel" relating to this statement was a matter for the trial court to determine, and we find no ground for a new trial here.

It was within the discretion of the trial court to permit certain witnesses to testify for plaintiff in rebuttal, and we find no abuse of discretion in this respect.

4. There was no error in the charge, or in the court's refusal to give instructions requested by defendant. The more important of the questions raised by the assignments of error in the instructions given and refused have been already disposed of in this opinion. The others involve either verbal inaccuracies, or requests covered by the charge. On the whole, the instructions given clearly and correctly submitted the issues to the jury.

Order affirmed.