## C. S. TREDWAY v. WESTERN UNION TELEGRAPH COMPANY.[1]

June 9, 1916.

Nos. 19,757—(153).

**Telegraph message — contract limiting liability of company.**

1. The rule of law sustaining the valuation provision in contracts for the transportation of property by a common carrier can have no proper application to contracts attempting to limit the liability of a telegraph company, by an agreeement fixing a "value" to the message, for the message has and can have no ascertainable value, and for that reason there is no fair basis, as in the case of property for transportation by a common carrier, the value of which may be readily ascertained, upon which the agreement may rest.

**Same — such contract void.**

2. Such an agreement as to a telegraph message is a violation of sections 6256 and 6259, G. S. 1913, and void, even though the effect thereof be not a total exemption from liability.

Action in the district court for Hennepin county to recover $466.66 for failure to forward or deliver plaintiff's telegraph message from Pipestone to Minneapolis. From an order, Fish, J., sustaining plaintiff's demurrer to defendant's second defense (stated in the first paragraph of the opinion), defendant appealed. Affirmed.

*C. M. Ferguson* and *Albert T. Benedict,* for appellant.

*M. C. Tifft,* for respondent.

BROWN, C. J.

Defendant operates a telegraph line between Pipestone and Minneapolis, this state. On January 26, 1915, plaintiff delivered to defendant's operator at Pipestone a message addressed and to be transmitted and delivered

[1]Reported in 158 N. W. 247.

Note.—Cases passing on the question of liability of telegraph company for failure properly to transmit or deliver a message pertaining to the negotiation for, or offer of a contract, are reviewed in a note in 42 L.R.A.(N.S.) 419.

to certain grain dealers at Minneapolis. The message directed the dealers to buy for plaintiff 5,000 bushels of wheat at the September market price. Through the neglect of defendant the message was never transmitted or delivered. Plaintiff discovered this neglect several days later, and in then purchasing the wheat ordered by the message was compelled to pay a higher market price therefor. He brought this action to recover damages for the failure of defendant properly to transmit the message, such damage being alleged to consist in the increased market price of the wheat. Defendant interposed in defense, among other things, that the message was received by defendant for transmisson to the addressee thereof under a contract by the terms of which the liability of defendant for any failure or neglect to transmit the same was fixed at the sum of $50; "at which amount," the alleged contract reads, "this message is hereby valued." The contract is found in the printed conditions appearing upon the back of the paper on which the message was written. Plaintiff demurred to the part of the answer setting forth this defense, and defendant appealed from an order sustaining the same.

The contention of defendant is that it was entirely competent for the parties to agree upon the value of the message, thus to limit the liability of defendant for a failure to deliver the same, and that the case is brought within the rule applied in Alair v. Northern Pacific R. Co. 53 Minn. 160, 54 N. W. 1072, 19 L.R.A. 764, 39 Am. St. 588, and other decisions upholding contracts of that character in respect to the transportation of property by common carriers. Cole v. Minneapolis, St. P. & S. S. M. Ry. Co. 117 Minn. 33, 134 N. W. 296; Ford v. Chicago, R. I. & P. Ry. Co. 123 Minn. 87, 143 N. W. 249; Dunnell, Minn. Dig. 1916 Supp. § 1312. But the rule announced in those cases can have no proper application to contracts for the transmission of telegraph messages. The cases are wholly dissimilar and there is a marked distinction between contracts of that character and those for the transportation of property by a common carrier, insofar as injury or damage may result from the failure of performance, by the carrier in the one case and the telegraph company in the other. As to the former the property is before the parties, or its general character known, and they may with a clear understanding of the facts readily agree upon a value which each may be willing to accept as the basis for transportation charges, and as a limitation on the liability of the

carrier in case of loss. There is, at least in the theory and reason of the rule, no inequality in the position occupied by the parties; they deal at arm's length, and contracts in reference to the shipment and transportation may be made to express the deliberate judgment of the parties respecting the value of the property. The situation is entirely different when we come to the transmission of telegraph messages. Such messages in the nature of things can have no fixed or ascertainable value which may fairly be made the basis of a contract limiting liability on the part of the telegraph company. Neither can the damage likely to result from mistakes of operators or from the failure to transmit the message be ascertained or determined in advance, not even with approximate correctness. Any attempt to do so, whether in the form of an express contract fixing a "value" to the message, or otherwise, would find support only in the arbitrary agreement of the parties, an agreement not founded upon known or ascertainable facts. Of necessity the injury suffered either by the sender or addressee of the message must be measured by the character and extent of the error of the operator, or by his failure to transmit the message at all, the consequences of which can be known only after the failure or error has occurred. The injury may be measured by and wholly depend upon the length of time the transmission is unnecessarily delayed, and the change in conditions in reference to and surrounding the subject matter of the message during the delay. It may be measured wholly by a mistake in the transmission. If a message be sent by the owner to his agent, authorizing an acceptance of $22 per acre for a tract of land for which the agent is negotiating a sale, and the message goes through fixing the price at $20 per acre, upon which the sale is completed, the injury is the loss of two dollars per acre for the land. By no possible method could this have been ascertained in advance, for the nature of the error of the operator could not be foretold. The same situation necessarily is presented in connection with practically every message that may be offered for transmission. There exists no fair basis for a stipulation fixing the value of the message at a definite amount, when in fact the injury resulting from the failure promptly to transmit and deliver this same depends wholly and entirely upon the nature and character of the subsequent default of the company. This clearly differentiates the case from those upholding contracts for the transportation of property. Strong v.

Western Union Tel. Co. 18 Idaho, 389, 109 Pac. 910, 30 L.R.A.(N.S.) 409, Ann. Cas. 1912A, 55; Blackwell Milling & Ele. Co. v. Western Union Tel. Co. 7 Okla. 376, 89 Pac. 235, 10 Ann. Cas. 855, and note.

But it would seem that our statutes also fully dispose of the question adversely to defendant. General Statutes 1913, § 6256, provides as follows:

"Persons and corporations engaged in the business of transmitting messages by telegraph lines are common carriers, and as such shall serve all persons, without discrimination or preference, for reasonable compensation; and every contract, notice or condition stipulating for exemption from liability for the consequences of their neglect shall be void."

Section 6259 imposes diligence upon the part of such companies in the transmission and delivery of messages, and for a failure thereof declares that the company shall be "liable in a civil action at the suit of the party injured for all damages sustained by reason of such neglect or omission."

These two statutes must be taken together and construed as though they were a part of the same section. The one provides that a person injured by the failure of the telegraph company to transmit and deliver the message shall be entitled to recover *all damages* suffered in consequence thereof. The other declares telegraph companies common carriers and provides that every contract, notice or condition for an "exemption" from the liability so imposed shall be void. Prior to and at the time the statute was enacted, there was much conflict of authority in respect to the validity of various stipulations and conditions imposed by telegraph companies in attempts to lessen and restrict their liability for errors and mistakes in the transmission of messages, and in minimizing the damages in any case where recovery might be had. A collection of the authorities will be found cited in 10 Ann. Cas. 857. No case directly presenting the question had come to this court, though the right of a common carrier of merchandise to impose restrictions upon its liability was recognized in Christenson v. American Exp. Co. 15 Minn. 208 (270), 2 Am. Rep. 122. The rule was affirmed and applied in Alair v. Northern Pacific R. Co. supra, in 1893. But the validity of such stipulations as to a telegraph company first came before us in Francis v. Western Union Tel. Co. 58 Minn. 252, 59 N. W. 1078, 25 L.R.A. 406, 49 Am. St. 507, where certain conditions were

held unreasonable and void. While the statute here before the court was referred to in that case, the decision was not founded thereon, but rather upon the general principles of the law of contracts. The legislature, in the enactment of the statute cited, had before it the conflicting views of the courts upon the subject, the difficulty, in fact practical impossibility, of determining in advance the damage naturally to result from the failure to transmit and deliver a message, or the character or extent of an injury for error or mistake therein, and it seems quite clear that the lawmakers intended to put the question completely at rest in this state. This they attempted to accomplish by declaring that "every contract, notice or condition stipulating for exemption from liability  *   *   *   shall be void." The validity of the statute is not questioned. But it is contended by defendant that it does not prohibit an agreement fixing a "value" to the message, or invalidate a contract exempting the company in part, as distinguished from an attempted total exemption. We do not sustain this claim, for such a construction of the statute would run counter to what we deem the manifest purpose of the legislature. It is obvious that there can, in the nature of things, be no fair valuation of a telegraph message, and that the damage to result from a failure correctly and promptly to transmit the same is determinable only when the default and nature thereof is disclosed. The legislature had these considerations in mind when considering the statute, and intended by its enactment to preclude the right to enter into a contract by which a valuable right might be surrendered, and a release from negligence granted, without sufficient basis in fact or reason to support the same. This prohibition necessarily precludes the right to "value" a telegraph message, such value being intended by the parties as a limitation on the liability of the telegraph company. We are also clear that there can be no partial exemption from liability, that the statute was intended to leave the parties free to demand their legal rights unaffected by stipulations or agreements intended to relieve the company from liability either in whole or in part. This construction of the statute is sustained by the authorities. Moulton v. St. Paul, M. & M. Ry. Co. 31 Minn. 85, 16 N. W. 497, 47 Am. Rep. 781; Chesapeake & O. Ry. v. Beasley, 104 Va. 788, 52 S. E. 566, 3 L.R.A. (N.S.) 163; Lucas v. Burlington C. R. & N. Ry. Co. 112 Iowa, 594, 84 N. W. 673; Railway Co. v. Wynn, 88 Tenn. 320, 14 S. W. 311; Kemp v. Western Union Tel. Co.

28 Neb. 661, 44 N. W. 1064, 26 Am. St. 363. The authorities cited by appellant relate for the most part to transportation contracts and are not here in point.

Order affirmed.