JAMES J. PATANE, Claimant, *v.* THE STATE OF NEW YORK.

Claim No. 16602.

(State of New York, Court of Claims, January, 1921.)

*Damages — liability of state for defective and unsafe canal bridge — absence of warning signs at either end as required by Laws of 1917, chap. 472, §§ 129, 130 — damages for loss of use of truck during repairs and for expense of repairs, allowed.*

CLAIM for personal damages due to the negligence of the state in constructing and maintaining a bridge over the old Erie canal.

Henry J. Crawford, for claimant.

Glenn A. Frank, deputy attorney-general, for the state.

MORSCHAUSER, J. Claimant presents a claim alleging that he sustained damages to personal property due to the negligence of the state in constructing and maintaining a bridge known as Lundrigan's bridge over the old Erie canal about a half mile south of the south line of the city of Watervliet in the county of Albany; and that said bridge was constructed and maintained in such a condition as to make the said bridge unsafe for automobiles and other vehicles to pass over the same; and that the state permitted the flooring and timbers of said bridge to become unsafe, rotten and defective; and that such condition existed without any warning to the public; and that it did not have upon either end a warning sign as required by sections 129 and 130 of chapter 472 of the Laws of 1917.

Section 129 of chapter 472 of the Laws of 1917 requires the superintendent of public works when such bridge becomes weakened or unable to bear a load of twelve tons to post or erect conspicuously at each end of such bridge a sign stating the maximum capacity of such bridge and that the use of such posted bridge with a load beyond the stated maximum capacity resulting in damage to person or property shall be deemed contributory negligence upon the part of the person so using the same.

Under the Canal Law, section 47 of chapter 13, Laws of 1909, the state assumes liability for any injury to any person sustaining damages from the canals or from their use or management or resulting or arising from the neglect or conduct of any officer of the state having charge thereof.

The claimant on the day in question was crossing said bridge over the old Erie canal with a truck and load weighing in all six tons. The truck broke through the flooring of the bridge and rested on the lower timbers of the bridge, and the automobile which was being driven by claimant at the time was more or less injured and damaged.

Upon the trial the claimant gave evidence tending to show that the timber of the bridge was rotten and dozy, and unsafe and in a dangerous condition. This was denied by the witnesses for the state. The claimant also produced evidence upon the trial by himself, and other witnesses who live in the neighborhood of the bridge, and persons who were present at the accident, that there were no warning signs as required by law at either end of the bridge. The state gave evidence upon the trial by a number of its employees that these signs were up and that they had observed them from time to time; but all the witnesses, both for the state and the claimant, agree that the next day

after the accident there was no warning sign at either end of the bridge.

We believe from the testimony that the bridge was defective and the timbers rotten. The state's witnesses who were mostly employees in the service of the state testified that one of their duties required them to report the absence of such signs at bridges, and that they frequently noticed the sign on this bridge, and that within a short time of the accident the signs were on the bridge located as required by law. There are about thirty bridges under the care and management of the division in which this bridge is located, and these employees had to do more or less with all of these bridges. They had many duties to perform. Most of them were laborers; and it seems rather incredible to the court that they should pay strict attention to warning signs in connection with their other duties. If their testimony is to be believed this court would have to find that the claimant or someone in his behalf was dishonest and corrupt enough immediately after the accident to remove both signs for the purpose of establishing a claim. The claimant did not impress us as a person of that character; and it is doubtful whether he had any thought at that time of a claim or anything else except to save his automobile and the load. A large number of witnesses who were disinterested and had no reason to testify falsely and had no interest in the claimant, and who were strangers to him, testified that they frequently crossed and recrossed this bridge, some of them living in the immediate neighborhood of the bridge, and that there were no warning signs and had not been for a long time prior to the date of the accident.

We are inclined to think that there was no warning sign at either end of the bridge at the time of the

accident to the claimant, and that the bridge was defective and the timbers somewhat decayed.

The claimant claims $441.22 for repairs to the truck; depreciation in value to the truck $500, and loss of the use of the truck for fourteen days at $25 a day, $350.

We think the claimant is entitled to recover the money he expended for repairs in restoring the truck to its condition as it existed immediately before the accident; and he is also entitled to be paid for the loss of the use of the truck during the time it was being repaired, but we do not believe that the claimant is entitled to recover for the item of depreciation in value of the truck. The claimant could recover damages, the amount being the difference between the market value of the truck before and after the injury; or he could recover the costs of reparation and the loss of the use of the car. The usual measure of damages in cases of that kind is the difference in market value of the car immediately before and after the accident, and expenses from the injury; or the costs of reparation and the reasonable value of the use of the truck during the time it was being repaired. We do not believe that the claimant could recover both the depreciation in value and also the costs of reparation. We do not think that the claimant should be allowed to recover for the cost of complete restoration of the car and the use of the car while being repaired, and in addition thereto the depreciation in value. The truck was completely repaired, the cost of which he is allowed, and he is also allowed for the use of the truck while it was not in operation. We think this is all that the claimant is entitled to. The damage to the truck was stated by the claimant and the repair man, and it appeared from the testimony of the mechanic who repaired the truck that it was repaired and was fully as good after it was repaired as it had been before the

accident. The amount of depreciation in value of the car before and after was stated by a person who was interested; and we doubt the correctness of his opinion, and are not inclined to believe that the damage was to the extent that he stated.

Therefore, the claimant should receive the moneys expended by him in the repair of the truck amounting to the sum of $441.22, and the loss of use of the truck for fourteen days at $25 a day amounting to $350, a total of $791.22.

Judgment is, therefore, ordered for the sum of $791.22.

ACKERSON, P. J., concurs.

Judgment accordingly.