## S. G. PALMER COMPANY v. ILLINOIS CENTRAL RAILROAD COMPANY.[1]

July 3, 1925.

No. 24,371.

**Carrier not relieved of liability for management of its trains even when accompanied by shipper's caretaker of carload of fruit.**

1. Where the shipper of fruit furnishes a caretaker to look after heat protection the carrier is relieved thus far; but it is not relieved of liability for negligence in the management of its train. In such a case proof that the fruit was in good condition when delivered to the carrier, and in bad condition, because of smoke and soot coming from the heater, when received at destination, does not make a cause of action.

**Carrier not relieved of liability as of law by shipper's noncompliance with rule as to fastening heaters.**

2. A rule of the carrier that heaters must be securely fastened and braced is not such a term of the contract that nonperformance by the shipper relieves the carrier of liability, or charges the shipper with contributory negligence as of law.

**What finding was required by evidence and what finding not required.**

3. The evidence did not require a finding that the shipper was negligent in respect of the installation or care of the heater or, if found negligent, that its negligence was the sole cause of damage to the fruit; and it was of such character as to justify a finding that the defendant was negligent in the movement of its train, causing the overturning of the heater.

**Carrier liable when its negligence was concurrent proximate cause of injury to fruit.**

4. Though the shipper was negligent in respect of the installation of the heater, or in caring for it, if the carrier was negligent in respect of the movement of the train so that its negligence proximately concurred as a cause of the overturning of the heater, and the consequent damage to the fruit, it was liable notwithstanding the fault of the plaintiff.

[1]Reported in 204 N. W. 566.

**Measure of damages.**

5. The measure of damages was the difference in the value of the carload of bananas when it reached its destination in its damaged condition and its value if not damaged. There was sufficient evidence as to the carload value at destination.

1. See Carriers, 10 C. J. pp. 77, § 79, 378 § 580.
2. See Carriers, 10 C. J. p. 392, § 601.
3. See Carriers, 10 C. J. pp. 389, § 600, 392, § 601.
4. See Carriers, 10 C. J. p. 125, § 153.
5. See Carriers, 10 C. J. pp. 390, § 600, 396, § 606.

Action in the district court for Hennepin county to recover damages to fruit caused by negligence in transportation. The case was tried before Baldwin, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Brown & Guesmer* and *W. S. Horton,* for appellant.
*Devaney & Edwards* and *R. V. Gleason,* for respondent.

DIBELL, J.

Action to recover damages to an interstate shipment of fruit. There was a verdict for the plaintiff. The defendant appeals from the order denying its alternative motion for judgment or a new trial.

In November, 1920, the Cuyamel Fruit Company shipped to the plaintiff from New Orleans to Minneapolis a carload of bananas. The defendant was the initial carrier. At Dubuque, Iowa, the car was transferred to the Milwaukee line which completed the transportation. The shipper provided a messenger and furnished heat protection by heaters, constructed for that purpose, which were placed in the bunkers of the refrigerator car and were in charge of the messenger.

1. The bananas were in good condition when they left New Orleans and were damaged by soot and smoke when they arrived at Minneapolis. Proof of these facts did not, as in the ordinary case where the carrier has sole charge of the shipment, establish

liability. The furnishing of a caretaker to look after heat protection relieved the defendant carrier from liability for damages arising from want of heat, or directly and solely from the use of the heater; but not from liability for acts of negligence in the management of the train. Boehl v. C. M. & St. P. Ry. Co. 44 Minn. 191, 46 N. W. 333; Cole v. M. St. P. & S. S. M. Ry. Co. 117 Minn. 33, 134 N. W. 296; Zimmerman v. N. P. Ry. Co. 140 Minn. 212, 167 N. W. 546; 10 C. J. 381; Michie, Carriers, § 2085; 4 Elliott, Railroads, § 2338.

2. The defendant carrier had in force a rule as follows:

"Heaters and stoves must be of suitable design as to safety, and must be securely fastened and braced."

The heaters used were not fastened or braced. The evidence rather supports the view that it was not customary to fasten or brace heaters when placed in bunkers, at least heaters of the kind used; but, however this may be, the rule was not a term of the contract the nonperformance of which relieved the carrier of liability, or charged the shipper with contributory negligence as of law. At the most it was something to be considered when inquiring whether the shipper was negligent. This was substantially the theory of the submission to the jury.

3. The heater had a heavy and bulky base and was placed on the bottom or slats of the bunker. It weighed 70 or 75 pounds. It was not fastened or braced. There is evidence that it was not usual to fasten or brace heaters placed in the bunkers though the custom may have been different when placed on the floor in the body of the car. The evidence is that it was unusual for a heater to overturn. Some had heard of such a thing and some had not.

The heater was lighted at Freeport, Illinois, November 16, 1920, at 2 p. m. The car arrived at Dubuque at 9 p. m. of the same day. The heater was burning and all was well. The car went through the yards to the Milwaukee line and at 3 a. m. the next morning started for Minneapolis. An inspection made just before starting showed that the heater was partially overturned, and there were

smoke and fumes. A side door inspection was made at the next stop 55 miles north. There was a bulkhead from one side door of the car to the other. The bananas had shifted a foot or a foot and a half.

The jury was justified in finding that the overturning of the heater was caused by rough handling through the yards at Dubuque, and that the defendant was negligent. A finding was not required that the messenger was negligent in failing to give attention to the car as it went through the yards. The company's rule was that caretakers should ride in the caboose while the train was in motion. It was hardly intended, at least the evidence did not require it to be found, that it was the duty of the messenger to follow and inspect the car in its movements through the yards, and apparently that was not the custom.

4. The court in effect charged the jury that though the messenger was negligent in respect of placing the heater, or caring for it through the yards, still the carrier, if it was negligent, and its negligence proximately concurred in overturning the heater and causing the damage, was liable. This is the rule. N. W. Marble & Tile Co. v. Williams, 128 Minn. 514, 151 N. W. 419, L. R. A. 1915D, 1077; Di Vita v. Payne, 149 Minn. 405, 184 N. W. 184. And see Dobie, Bailments & Car. 338; Hutchinson, Car. (3d ed.) § 333; 4 Elliott, Railroads (3d ed.) § 2241; 1 Moore, Carriers (2d ed.) 559.

5. The measure of damages was the difference between the value of the carload of bananas when it reached Minneapolis in a damaged condition, and its value not damaged. The defendant claims that upon the evidence given by the plaintiff, the value at destination, if the bananas had not been damaged, was not carload value, but the value of the carload when sold to retailers or directly to consumers. There was some confusion in the testimony as to value; but it bears the construction, at least some of it does, that it was directed to the value of a carload as such.

Order affirmed.