221 F.2d 934
 ILLINOIS CENTRAL RAILROAD COMPANY, a Corporation, Appellant,
v.
Vincent ZUCCHERO, Cosimo Zucchero, Joseph Zucchero and
Vincent Zucchero, Jr., Partners, d/b/a Sugar Ripe
Banana Company (formerly V. Zucchero &
Company), Appellees.
 No. 15216.
 United States Court of Appeals Eighth Circuit.
 May 9, 1955.
 
 Herbert E. Bryant, St. Louis, Mo. (Wn R. Gentry, St. Louis, Mo., Joseph H. Wright and Herbert J. Deany, Chicago, Ill., were with him on the brief), for appellant.
 H. C. Gaebe, Jr., St. Louis, Mo. (Jones, Hocker, Gladney & Grand, St. Louis, Mo., were with him on the brief), for appellees.
 Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.
 GARDNER, Chief Judge.
 
 
 1
 Appellees who are partners doing business at St. Louis, Missouri, under the name and style of the Sugar Ripe Banana Company brought this action against the Illinois Central Railroad Company, an interstate common carrier to recover damages to twelve carloads of bananas transported at various dates between February 9, 1950, and November 5, 1950, from New Orleans, Louisiana, to St. Louis, Missouri. The parties will be referred to as they appeared below. The complaint set forth twelve causes of action, one for each of the carloads of bananas involved in the action. The complaint as a basis of liability in substance charged that the defendant at all times pertinent to the action was a common carrier of goods and passengers for hire and maintained and operated a railroad between the city of New Orleans, Louisiana, and the city of St. Louis, Missouri. The pertinent allegations of the first cause of action may be taken as typical from which we quote as follows:
 
 
 2
 '4. On the 9th day of February, 1950, in consideration of the sum of $276.06 then and there duly paid to it by the plaintiff, defendant undertook and agreed safely to carry to St. Louis, Missouri, by way of the defendant railroad, and deliver to plaintiff in good, sound condition, certain goods and merchandise, the property of plaintiff, consisting of 21,790 pounds of bananas, which bananas were then and there delivered to the defendant at New Orleans, Louisiana, in good, sound condition, which the defendant so received for the purposes and upon the agreement above mentioned.
 
 
 3
 '5. Defendant did not safely carry and deliver said goods pursuant to said agreement, but, on the contrary, when said bananas were delivered at the St. Louis destination, they arrived in a damaged and depreciated condition, and that 6390 pounds of said bananas were wholly lost to the plaintiff, to its damage in the sum of $896.73, which amount includes handling charges incident to banana salvage.'
 
 
 4
 In the aggregate plaintiffs sought to recover $10,470.60. Defendant by its answer admitted that it was a common carrier; that it maintained and operated a railroad line between New Orleans, Louisiana, and St. Louis, Missouri; that it received for transportation the bananas as alleged, but denied that when they were received and transported from New Orleans, Louisiana, to St. Louis, Missouri, they were in good sound condition and in effect denied all other material allegations of the several causes of action set out in the complaint except the jurisdictional and formal allegations.
 
 
 5
 Before trial defendant admitted certain damage to the bananas in each of the cars involved and there were other admissions which materially relieved plaintiffs of proof of details as to the weights of the shipments involved and dates of transportation and deliveries.
 
 
 6
 In accordance with the accepted practice the bananas were transported in bunches while yet green and at the various times they were unloaded and delivered to the plaintiffs they were inspected for damage by representatives of the Western Weighing and Inspection Bureau, an agency of the defendant. Following delivery to plaintiffs they were placed in a banana processing room by them where they were retained for three to five days in accordance with the accepted practice of the trade. After having been processed they were inspected by the plaintiffs and their employees for bruises and damages and there was evidence that bruises to the bananas were not readily discoverable until after the bananas had been processed or ripened. There was evidence that when the fruit was fully processed the bunches of bananas were moved out of the processing room and placed on a cutting table where the damaged fruit was removed from the cut hands of bananas and placed on a scale. The weight of the damage to each bunch of bananas was recorded on a tally sheet. It resulted that the evidence produced by plaintiffs was based upon an inspection and handling of the bananas after they had gone through the ripening process, while the evidence produced by the defendant was based upon an inspection of the bananas while they were still green as they were unloaded from the freight cars. When distributed to retail dealers these stalks of bananas are customarily cut into smaller bunches called hands containing six to nine bananas and this is the only from in which they are salable to the retail trade.
 
 
 7
 There was testimony that the demand for bananas exceeded the supply and that plaintiffs could have sold not only the undamaged bananas actually delivered but in addition could have sold bananas exceeding the quantity damaged in transit.
 
 
 8
 The court found the issues in favor of the plaintiffs and filed a memorandum opinion, D.C., 121 F.Supp. 53, which it adopted as its findings of fact and conclusions of law, pursuant to which it entered judgment for plaintiffs for $8,833.61. From the judgment so entered defendant seeks reversal on substantially the following grounds:
 
 
 9
 1. The findings of facts by the court as to the loss of bananas in Counts I, III, VII, VIII, IX and X were clearly erroneous, were against the greater weight of evidence, and were based upon conditions subsequent to the termination of liability of defendant.
 
 
 10
 2. The proper measure of damages to be applied in this case was the cost of the bananas to plaintiffs plus the freight charges from New Orleans to St. Louis, and the measure of damages applied by the court was erroneous.
 
 
 11
 As to six of the causes of action defendant concedes the correctness of the court's findings and judgment. The findings of the court are, of course, presumptively correct and may not be set aside on appeal unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; Sherman Inv. Co. v. United States, 8 Cir., 199 F.2d 504. The evidence of plaintiffs as to the extent of physical damage to the bananas was based upon an actual inspection of all the bananas in the process of which the damaged bananas were actually cut from the stem and weighed while the evidence produced by the defendant was based upon an inspection of the bananas as they were removed from the car and was in the nature of an estimate rather than actual weight. It is argued, however, that the liability of defendant for damage ceased at the car door and that the evidence of conditions after they left the car door should not have been accepted as evidence of damage resulting from the transportation. There was evidence, however, that bruises or injuries to the green bananas were not always apparent or readily detected while the bananas were still green but when they were ripened the bruises and damages were readily evident. The fact that this condition did not become manifest until after the bananas had left the car door did no violence to the rule that the liability of the carrier for damages did not extend beyond the car door. The damage was still that which had occurred before the bananas left the car door. There could be no doubt that the testimony that the damaged bananas had been cut away from the stems and actually weighed, if believed, was more definite and accurate than the mere inspection of the green bananas and an estimate of the weight of the bananas damaged. The credibility of the witnesses was, of course, for the trial court and the finding of the court as to the extent of physical damage was, we think, sustained by abundant competent evidence.
 
 
 12
 It remains to consider defendant's contention that the court did not apply the proper rule of damages in determining the amount recoverable. Each case must depend somewhat on its peculiar facts. Where property has been damaged in shipment the general rule for determining the amount of damages is the difference between the market value it would have had had it been transported without damage and its market value in its damaged condition. Gulf, C. & S.F.R. Co. v. Texas Packing Co., 244 U.S. 31, 37 S.Ct. 487, 61 L.Ed 970; Reider v. Thompson, 5 Cir., 197 F.2d 158; Aurora Fruit Growers' Ass'n v. St. Louis-San Francisco Ry. Co., 220 Mo.App. 1316, 297 S.W. 440; S. G. Palmer Co. v. Illinois Cent. R. Co., 164 Minn. 68, 204 N.W. 566. In the instant case, as has been pointed out, the bananas were not resold by the plaintiffs in carload lots but were prepared for resale to the trade by being cut into hands and placed in boxes and the evidence was undisputed that the plaintiffs could not supply the demand because the supply to them was rationed. The court held that the basis of value of the bananas was the wholesale market price of cut bananas at destination in St. Louis, Missouri, plus the added expense of separating the damaged bananas from the undamaged bananas. The Interstate Commerce Act provides that a shipper who suffers damage to his property in transportation in interstate commerce shall be compensated for 'the full actual loss, damage, or injury to such property * * *.' 49 U.S.C.A. § 20(11). The trial court in referring to this question among other things said:
 
 
 13
 'Under the circumstances plaintiffs' loss was what the damaged bananas could have been sold for in St. Louis shown by the St. Louis Market Reporter on the day of sale of undamaged bananas from the particular shipment. Because damaged bananas appeared in substantial portions in each car forming the claim, it would have been necessary to segregate the damaged bananas before any sales of bananas could have been made from such bunches. It was the custom of the trade in St. Louis for wholesalers such as plaintiffs to cut their bananas into hands for sale to the retailers. Plaintiffs' testimony is that there was a 10% additional expense in cutting the hands due to the necessity of segregating the damaged bananas. Plaintiffs are entitled to recover this 10%.'
 
 
 14
 The applicable rule as to the measure of damages is stated in Reider v. Thompson, supra (197 F.2d 160), as follows:
 
 
 15
 'We find the evidence sufficient to establish a prima facie case of the market value of the sheepskins had they been received in good condition, and their market value in the condition in which they did arrive. This is the well established measure of damages in such cases.'
 
 
 16
 The authorities relied upon by defendant on this question are readily distinguishable. We think the court under the circumstances here shown applied the right rule of damages to compensate plaintiffs for 'the full actual loss, damage, or injury to such property * * *.'
 
 
 17
 The judgment appealed from is therefore affirmed.